UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTHONY KOZUR, | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiff, | : | Civil Action No. 18-08750 |
| | : | |
| v. | : | **OPINION** |
| F/V ATLANTIC BOUNTY, LLC., et al, | : | |
| | : | |
| Defendants. | : | |

This case comes before the Court on Defendants' Motion to Dismiss or Stay Plaintiff's Action and Compel Arbitration. [Dkt. Nos. 8]. The Court heard oral argument on this Motion, on September 30, 2019. Thereafter, the Court issued an Opinion, finding that questions of fact and credibility pertaining to the enforceability of the arbitration clause at issue precluded a determination on Defendants', F/V Atlantic Bounty, LLC and Sea Harvest, Inc., Motion to Compel Arbitration.[1] As a result, the Court ordered and conducted an evidentiary hearing on January 9, 2020, to determine whether the Plaintiff agreed to arbitrate his current claims.

The Court has considered the initial written submissions of the parties, the arguments presented at the hearings on September, 30, 2019 and January 9, 2020, as well as the parties' supplemental briefing. For the reasons stated on the record, as well as those that follow, the Motion to Dismiss or Stay Plaintiff's Action and Compel Arbitration will be granted.

---

[1] The Court's October 16th Opinion simultaneously addressed a second motion to dismiss in this matter [Dkt. No. 9], which the Court granted, thereby dismissing Atlantic Cape Fisheries as a Defendant in the case.

I.     Background

The Court reincorporates the relevant factual background set forth in Kozur v. F/V Atlantic Bounty, LLC., et al, No. 18-08750 (D.N.J. Oct. 16, 2019).

Plaintiff, Anthony Kozur ("Plaintiff"), filed a Complaint with this Court on May 3, 2018, against Atlantic Cape Fisheries, Inc. and F/V Atlantic Bounty, LLC. On June 21, 2018, Plaintiff amended his complaint, adding Sea Harvest, Inc. as a Defendant. Plaintiff's Amended Complaint asserts claims for Jones Act Negligence (Count I), Unseaworthiness (Count II), and Maintenance and Cure (Count II). [Dkt. No. 5]. The basis of Plaintiff's seaman claims stem from events occurring on August 28, 2017. Specifically, Plaintiff claims that while in navigable waters, he slipped and fell on the "centerline stopper midship, twisting his back and causing serious injuries" in the course of his employment on Atlantic Bounty (the "Vessel"). (Compl. at ¶¶ 28-31).

Defendants F/V Atlantic Bounty and Sea Harvest filed a Motion to Dismiss or Stay Plaintiff's Action and Compel Arbitration pursuant to an arbitration clause contained in Plaintiff's employment contract, which Defendants argue is valid and enforceable against him. [Dkt. No. 8]. Defendant Atlantic Cape separately moved to Dismiss or Stay Plaintiff's Action and Compel Arbitration. [Dkt. No. 9]. The Court heard Oral Argument on September 30, 2019, and issued an Opinion and Order on October 16, 2020, (1) granting Atlantic Cape's Motion and dismissing Atlantic Cape from the case; and (2) dismissing without prejudice F/V Atlantic Bounty and Sea Harvest's Motion without prejudice, finding that the record before the Court, at that time, lacked sufficient information to determine the enforceability of the alleged arbitration agreement.

Therefore, the Court held an evidentiary hearing on January 9, 2020, on the issue of the enforceability of the arbitration clause against Plaintiff.

The following are the findings of fact from that hearing: Plaintiff has his GED and is able to write and read English. [Dkt. No. 36, Transcript of the Evidentiary Hearing held on 1/9/2020 ("Transcript"), 26:14-21]. In the past, Plaintiff worked in construction undertaking "remodel work". (Id. at 31:14-16). In this line of work, Plaintiff entered into written contracts with his clients. (Id. at 32:6-15).

Plaintiff has been a commercial fisher since at least 1989. (Id. at 16:18-21). Plaintiff began working for Sea Harvest/Atlantic Capes in 2009. (Id. at 20:5-7). On the first day of a trip with Sea Harvest/Atlantic Capes, everything gets loaded onto the ship; any gearwork required is completed; and the last thing the employees do, is sign the manifest. (Id. at 18-24). The manifest is a document that required signatures of the seamen, which Plaintiff signed every trip. (Id. at 19:2-12, 20:8-10). Plaintiff understood that the manifests he signed were employment agreements, in which he was agreeing to be a seamen on the vessel and work on the vessel. (Id. at 26:21-27:5).

 Plaintiff was usually the second person to receive the manifest. (Id. at 18:11-21). It was sometimes handed directly to Plaintiff, and other times the Captain "would come on deck and say, the manifest is on the table, everybody get the manifest signed," in which case the manifest would be open to the signature page. (Id. at 20:14-19). "[I]f the captain handed it to [Plaintiff] and said, have the guys sign this, [he] would be the one that would open it to the signature page to start the signing." (Id. at 23:3-6). All of the workers would sign their name and fill out the medical history. (Id. 22-25).

On the trip during which Plaintiff was allegedly injured, the manifest was on "the galley table open to the signature page." (Id. at 22:4-7). Plaintiff had never read through

the document and never saw any arbitration clause. (Id. at 24:11-13). No Captain explained that the manifest contained such a clause or directed him to read the clause. (Id. at 24:18-25; 27:9-11). Plaintiff has never read the manifest, asked to read it, or for a copy of the agreement. (Id. at 40-41). Plaintiff knew that there were terms within the manifest's pages, and proceeded to sign the "signature page" knowing that there were other pages within the document. (Id. at 42:-6-18). The pages making up the manifest are sequential.

## II.   Standard of review

On a motion to compel arbitration the Court must decide, first, whether "there is an agreement to arbitrate" and, second, whether "the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, & 950646, 584 F.3d 513, 523 (3d Cir. 2009). When the parties have a valid arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed.2d 444 (1985) (citation omitted).

The Rule 56 standard is appropriate in doing so where: (1) "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. at 774. Summary judgment under Rule 56 is appropriate if the record demonstrates that there is no genuine issue as to any material

fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); see also Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III.    Analysis

**A.  Whether the Parties have Agreed to Arbitrate**

The FAA creates "a strong federal policy" of resolving parties' disputes through arbitration by enforcing the parties' arbitration agreements. Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010) (en banc) (citation omitted). Before compelling arbitration, however, courts must be satisfied that the parties have an agreement to arbitrate, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (citations omitted).

General state law principles are utilized to determine whether the parties have agreed to arbitrate. Aliments Krispy Kernels, Inc. v. Nichols Farms, 851 F.3d 283, 289 (3d Cir. 2017). Under New Jersey contract principles, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1180 (N.J.

2016). "[A]ny contractual waiver-of-rights provision must reflect that the party has agreed clearly and unambiguously to its terms." Atalese v. U.S. Legal Servs. Grp., L.P., 99 A.3d 306, 313 (N.J. 2014) (internal quotation and citation omitted).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 314. "Whatever words compose an arbitration agreement, they must be clear and unambiguous that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law. In this way, the agreement will assure reasonable notice to the [party]." Id. at 316. "The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Id. at 314 (citation omitted).

"When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 690 (N.J. 2010). "Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." Gras v. Assocs. First Capital Corp., 786 A.2d 886, 894 (N.J. Super. Ct. App. Div. 2001) (citation omitted); see also Henningsen v. Bloomfield Motors, Inc., 161 A.2d 69, 84 (N.J. 1960) (describing same as a "general principle" of contract law).

Here, the arbitration clause in Plaintiff's employment contract (or "manifest") states in relevant part,

> I understand and agree that any dispute, claim or controversy arising out of
> my work as a crewmember, including but not limited to statutory Jones Act
> claims, negligence, unseaworthiness, maintenance and cure . . . or disputes
> relating to this agreement. . . shall be determined by one arbitrator sitting
> in Philadelphia, Pennsylvania. . . . ARBITRATION SHALL BE MY
> EXCLUSIVE REMEDY AND I UNDERSTAND THAT I GIVE UP MY
> RIGHT TO SUE, I FURTHER UNDERSTAND AND AGREE THAT I GIVE
> UP MY RIGHT TO SELECT THE VENUE FOR ANY CLAIM OR
> CONTROVERSY AND THAT I GIVE UP MY RIGHT TO A TRIAL BY

6

JUDGE OR JURY FOR ANY AND ALL CLAIMS, INCLUDING BUT NOT LIMITED TO STATUTORY JONES ACT, NEGLIGENCE, MAINTENANCE AND CURE, UNSEAWORTHINESS, AND WAGES.

[Dkt. No. 16-5, Crew Term of Employment (Manifest) dated August 25, 2017]. The clause further provides that "if the agreement to arbitrate is determined to be exempt from the enforcement under the Federal Arbitration Act, the laws of the State of New York shall be applied in determining the validity and enforceability of this agreement." (Id.). After considering the evidence in the record, as well as the plaintiff's testimony presented at the evidentiary hearing, the Court finds that the parties have an agreement to arbitrate under both New York and New Jersey law.

Plaintiff's testimony before the Court establishes that he can read and understand a contract, has regularly dealt with contracts in prior employment, and has the mental capacity to knowingly and voluntarily enter into a contractual agreement. Importantly, Plaintiff concedes that he signed the manifest at issue, that he knew the manifest acted as an employment contract, but that he did not read the document. Under New Jersey and New York law, failure to read a contract alone does not excuse performance. See Mildworm v. Ashcroft, 200 F .Supp. 2d 171, 176 (E.D.N.Y.2002) ("a person who signs a contract is presumed to know its contents and to assent to them."); Gras, 786 A.2d at 894.

Still, Plaintiff contends that the manifest page containing the arbitration clause, page 3, was not attached to the document he signed prior to the August trip in which he was allegedly injured. [Dkt. No. 34, p. 2]. There is nothing in the record, however, to support Plaintiff's argument. In fact, the argument is one of pure speculation. First, the pages within the manifest at issue are sequential. They were presented to Plaintiff on

7

"the galley table open to the signature page." (Id. at 22:4-7). Although Plaintiff did not see the page of the manifest containing the arbitration clause, he admittedly did not read that manifest; nor did Plaintiff ever read the manifests presented to him by his Captain prior to his trips with Sea Harvest/Atlantic Bounty. Plaintiff, notwithstanding, was aware these documents contained additional pages other than the signature page, and knew those pages provided information pertaining to his employment. Nonetheless, he did not ask to read the contract prior to signing it, and he did not ask for a copy to read it at any time. Therefore, there was no way Plaintiff could have known how many pages made up this particular manifest, outside of mere assumption.

Even so, Plaintiff submits that the arbitration clause cannot be enforced against him because Defendant failed to produce evidence that the arbitration clause was actually in any document Plaintiff signed. He stresses—as he testified at the evidentiary hearing—that no captain or vessel manager explicitly told Plaintiff that he was agreeing to arbitrate potential claims by signing the manifest. [Dkt. No. 34, p. 4]. Defendants, however, were under no obligation to alert plaintiff to the arbitration clause. Gras v., 786 A. 2d at 894 ("Although plaintiff contended that defendant never alerted him to the arbitration provision, no such obligation exists where the provision is not hidden."). While the Court recognizes that seamen are often afforded greater legal protections, Plaintiff provides no support for a finding that Defendants' obligation is altered because of Plaintiff's seaman status. In fact, "the New York Court of Appeals held that the ward of the admiralty doctrine does not shift the burden of proof in cases concerning the enforceability of an arbitration agreement." Barbieri v. K-Sea Transp. Corp., 566 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (citing Schreiber v. K–Sea Transportation Corporation, 9 N.Y. 3d 331, 879 N.E. 2d 733, 849 N.Y.S. 2d 194 (2007)).

In arguing to the contrary, Plaintiff cites to Angeles  v. Norwegian Cruise Lines, Inc., No. 01–CV–9441, 2002 WL 1997898 (S.D.N.Y. Aug. 29, 2002). [Dkt. No. 13, p. 7]. The Court in Angeles held that issues of fact as to whether the cruise line employer's forum selection clause was reasonably communicated to the employee precluded enforcement of such clause. See generally Id. Unlike the situation presented here, the plaintiff in Angeles claimed that she was "never given a copy of the [Standard Employment Contract ("SEC") and the Revised Standard Terms and Conditions ("RSTEC")]"— the documents containing the relevant clause, which were separate from her employment contract and did not require signatures. Id. at *4-5. Here, there is no dispute that Plaintiff was presented with the manifest. Thus, Angeles does not support Plaintiff's contention—that the arbitration clause here should not be enforced, even if the manifest Plaintiff signed contained an arbitration clause, as he never read or was told of the clause prior to signing. [Dkt. No. 13, p. 7]. See Bautista v. Star Cruises, 286 F. Supp. 2d 1352, 1363 (S.D. Fla. 2003), aff'd, 396 F.3d 1289 (11th Cir. 2005) (distinguishing Angeles v. Norwegian Cruise Lines, finding that "[w]hile [p]laintiffs contend that they were not given an opportunity to review [the standard terms] before signing, and that the font was too small, that does not support a conclusion that the Plaintiffs were not provided with any notice of the provisions to which they were agreeing.").[2]

---

[2] Skuse v. Pfizer, Inc., 202 A.3d 1, 11 (N.J. Super. App. Div. 2019), also cited by Plaintiff, is similarly distinguished. There, "[the employer defendant] did not request or obtain physical signatures from the employees who were supplied with the [arbitration] policy. . . [but] attempted to secure its employees' assent to the policy through the use of digital techniques." Id. More specifically, the employee accessed the binding arbitration policy via a "training module" and "the opening slide explain[ed] that the employee would be asked at the end of the

Simply put, Plaintiff has failed to provide any evidence that the arbitration clause was not included in the document he signed and agreed to, rather he has only proved he did not know what the document contained because he failed to read it. As such, Plaintiff is still bound by the terms of that manifest. See Upton v. Tribilcock, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

Moreover, the language of the arbitration clause in Plaintiff's manifest is clear and unambiguous. Martindale v. Sandvik, Inc., 173 N.J. 76, 96, 800 A.2d 872, 883-84 (2002) (upholding an arbitration clause that stated and explained the plaintiff was waiving her "right to a jury trial" and that "all disputes relating to [her] employment . . . shall be decided by an arbitrator"). It provides in bold font, in all capital letters, that arbitration shall be Plaintiff's only remedy and that he was giving up his right to a trial by judge or jury. The clause further states that Plaintiff was agreeing to, arbitrate any dispute arising from his work as a crewmember. This language is more than sufficient for a valid and enforceable arbitration clause, which need only, "at least in some general and sufficiently broad way, . . . explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Atalese, 219 N.J. at 446-47; see also Cell v. Moore & Schley Sec. Corp., 449 N.W.2d 144, 147 (Minn. 1989) ("New York law liberally allows arbitration under broadly worded arbitration clauses.").

---

presentation to 'acknowledge [his or her] receipt' of the company's form agreement – not mentioning the employee's need to also convey his or her assent to its terms." Id.

**B.  Enforcement of the Arbitration Clause under the Federal Arbitration Act**

Under Section 2 of the FAA:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2. "Maritime Transactions," however, do not include "contracts of employment of seamen." Id. § 1. "[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 537, 202 L. Ed. 2d 536 (2019). The arbitration clause here, is undeniably a written provision in a seaman's employment contract, and therefore, exempt from enforcement under the Federal Arbitration Act ("FAA"). In fact, the parties do not dispute that the FAA does not apply in this case.  [Dkt. No. 16, p. 1; Dkt. No. 34, p. 2]. Therefore, the issue before the Court is whether this seaman's agreement to arbitrate is enforceable as a matter of state law.

**C.  Enforceability of the Arbitration Clause under State Law**

Plaintiff submits that the FAA prohibits enforcement of arbitration clauses against seamen under state law. More specifically, Plaintiff contends that the arbitration clause is unenforceable under state law because: (1) the FAA preempts state arbitration related laws; (2) N.J. Stat. Ann. 10:5-12.7 prohibits the pre-incident waiver of statutory or case law rights; and (3) state law cannot compel arbitration of a seaman's claim because admiralty law requires uniform application.

As an initial matter, Plaintiff focuses primarily on arguing that the arbitration clause is not enforceable under New Jersey law. According to that arbitration clause,

11

however, "the laws of the state of New York shall be applied in determining the validity and enforceability of this agreement." "[O]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice," unless:

>    (a)    the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable  basis for the parties' choice, or

>    (b)    application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.

Collins v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017); Restatement (Second) of Conflicts of Laws § 187(2) (1969). Here, Plaintiff's contract was entered into in New Jersey, between a New Jersey individual and New Jersey companies. In fact, Defendant also appears to argue for the application of New Jersey law. [Dkt. No. 37, p. 14]. The parties provide no relationship between them or the transaction and the State of New York, and no other reasonable basis for the parties' choice in applying New York law. Neither party, however, has conducted a choice of law analysis or argued the applicable law in this case. Under such circumstances the Court will apply New Jersey law in determining the enforceability of the parties' arbitration agreement. Notably, the Court finds that no actual conflict between New Jersey law and New York law exits, with regard to compelling arbitration. See Westinghouse Elec. Corp. v. New York City Transit Auth., 82 N.Y.2d 47, 603 N.Y.S.2d 404, 407, 623 N.E.2d 531 (1993) ("It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions. . . . Thus '[i]t has long been the policy of the law to interfere

as little as possible with the freedom of consenting parties to achieve that objective.' ").

Importantly, both New Jersey and New York Courts have held that "[t]here is no language in the FAA that explicitly preempts the enforcement of state arbitration statutes." Palcko v. Airborne Express, Inc., 372 F.3d 588, 595 (3d Cir. 2004); Pine Valley Prods. v. S.L. Collections, 828 F. Supp. 245, 248 (S.D.N.Y. 1993). Recently, the New Jersey Supreme Court has further held "that the NJAA may apply to arbitration agreements even if parties to the agreements are exempt under section 1 of the FAA." Arafa v. Health Express Corp., No. 083154, 2020 WL 3966956, at *13 (N.J. July 14, 2020); Volt Info. Scis., 489 U.S. at 477, 109 S. Ct. 1248 ("the FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration.").[3] Although Plaintiff concedes that there is no express preemption, he argues that Congress has occupied the field with respect to seamen's personal injury claims against their employers through the Jones Act, and state arbitration statues must defer to Congress' occupation. [Dkt. No. 34, at p. 16]. Specifically, Plaintiff contends that the rights afforded under the Jones Act cannot be contractually waived.

"[T]he legislative record on the § 1 exemption is quite sparse." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). In Circuit City Stores, the Supreme Court of the United States explained:

---

[3] Valdes v. Swift Transp. Co., 292 F. Supp. 2d 524, 527 (S.D.N.Y. 2003) (holding "that any inapplicability of the FAA would not preclude enforcing the arbitration agreement under state law")); O'Dean v. Tropicana Cruises Int'l, Inc., No. 98-cv-4543, 1999 WL 335381, at *1 (S.D.N.Y. May 25, 1999) ("The inapplicability of the FAA does not mean ... that arbitration provisions in seaman's employment contracts are unenforceable, but only that the particular enforcement mechanisms of the FAA are not available.")

> it is a permissible inference that the employment contracts of the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them. By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers, see Shipping Commissioners Act of 1872, 17 Stat. 262. . . . It is reasonable to assume that Congress excluded "seamen" and "railroad employees" from the FAA for the simple reason that <u>it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers</u>.

Id. at 120–21.

In other words, the Supreme Court has suggested that "Congress might have limited § 1 to seamen and railroad employees because there were statutory dispute resolution schemes already in place for such workers" or in development. Singh v. Uber Techs. Inc., 939 F.3d 210, 224 (3d Cir. 2019). Plaintiff argues that "Congress has passed a dispute resolution system for seamen, [with] the Jones Act, and this must take preeminence over any state developed dispute resolution system.

Congress' general intent in enacting the Jones Act "was to provide liberal recovery for injured workers, and it is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers." Kernan v. Am. Dredging Co., 355 U.S. 426, 432, 78 S. Ct. 394, 398, 2 L. Ed. 2d 382 (1958) (citations omitted). The act states in pertinent part:

> A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104. The Jones act also incorporates the Federal Employers' Liability Act ("FELA"). " <u>Garrett v. Moore-McCormack Co.</u>, 317 U.S. 239, 244, 63 S. Ct. 246, 250, 87 L. Ed. 239 (1942).

Under Section 5 of the FELA , "[a]ny contract . . . the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 USC § 55.  FELA's Section 6 adds, in pertinent part:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

45 U.S.C. § 56. Pursuant to Section 5 and 6, the Supreme Court has held that "contracts limiting the choice of venue are void as conflicting with the Liability Act." <u>Boyd v. Grand Trunk W. R. Co.</u>, 338 U.S. 263, 265, 70 S. Ct. 26, 27, 94 L. Ed. 55 (1949). Under this regime, some courts have held that seamen stand "in a position perfectly analogous to that of [a railroad worker under the FELA]," and that <u>forum-selection</u> causes in cases of domestic litigants, are unenforceable. <u>Nunez v. Am. Seafoods</u>, 52 P.3d 720, 723 (Alaska 2002); <u>Boutte v. Cenac Towing, Inc.</u>, 346 F.Supp.2d 922 (S.D. Tex. 2004). Accordingly, Plaintiff submits that this rule equally applies to the Jones Act and, therefore, prohibits pre-dispute arbitration agreements to Jones Act claims. <u>Boyd</u>, however, did not consider the enforceability of arbitration clauses.

Additionally, most courts have noted that FELA's venue provision is inapplicable to the Jones Act. <u>Terrebonne v. K-Sea Transp. Corp.</u>, 477 F.3d 271, 283 (5th Cir. 2007); <u>see</u> <u>also</u> <u>Harrington v. Atl. Sounding Co.</u>, 602 F.3d 113, 121–22 (2d Cir. 2010) ("FELA § 6

therefore cannot reasonably be read to include a blanket prohibition on <u>seamen arbitration agreements</u> when, at the time of enactment, that provision did not contemplate, either in letter or spirit, the existence of an arbitral forum." (emphasis added)). "The Jones Act, in providing that a seaman should have the same right of action as would a railroad employee, does not mean that the very words of the FELA must be lifted bodily from their context and applied mechanically to the specific facts of maritime events." <u>Cox v. Roth</u>, 348 U.S. 207, 209, 75 S. Ct. 242, 99 L. Ed. 260 (1955).

New Jersey case law on this particular issue is scant. But having considered the rationale of the courts who have addressed whether FELA's venue provision applies to Jones Act cases and the history behind the enactment of the Jones Act, this Court finds that FELA's venue provision is not incorporated into the Jones Act. <u>See</u> <u>Utoafili v. Trident Seafoods Corp.</u>, No. 09-2575 SC, 2009 WL 6465288, at *3 (N.D. Cal. Oct. 19, 2009); <u>In the Matter of Nicholas Schreiber v. K–Sea Transportation Corp.</u>, 9 N.Y.3d 331, 340, 849 N.Y.S.2d 194, 879 N.E.2d 733 (N.Y. 2007) ("Predating the FAA by five years, the Jones Act contains no expression of intent to limit the pursuit of its remedies to the judicial forum.").[4] "Under federal maritime law, there is nothing inherently invalid or unenforceable about an agreement to arbitrate disputes relating to the employment of seamen." <u>O'Dean v. Tropicana Cruises Int'l, Inc.</u>, No. 98 CIV. 4543 (JSR), 1999 WL 335381, at *2 (S.D.N.Y. May 25, 1999); <u>Schreiber</u>, 9 N.Y.3d at 340, 849

---

[4] <u>See</u> <u>also</u> <u>Riley v. Trident Seafoods Corp.</u>, No. CIV. 11-2500 MJD/AJB, 2012 WL 245074, at *3 (D. Minn. Jan. 9, 2012), <u>report and recommendation adopted,</u> No. CIV. 11-2500 MJD/AJB, 2012 WL 245248 (D. Minn. Jan. 26, 2012) ("the majority of courts have found that FELA's prohibition against venue selection clauses is *not* incorporated into the Jones Act." (collecting cases)).

N.Y.S.2d 194, 879 N.E.2d 733 ("the doctrine that seamen are 'wards of admiralty' does not outweigh the policy favoring arbitration."); <u>Lindo v. NCL (Bahamas), Ltd.</u>, 652 F.3d 1257, 1276 (11th Cir. 2011) ("The fact that [Plaintiff] asserts a statutory Jones Act claim does not affect the strong presumption in favor of enforcement of the choice clauses in his Contract." (citing <u>Mitsubishi</u>, 473 U.S. at 626)).

Here, Plaintiff relies heavily on the application of FELA Section 5 to the Jones Act, and provides no further evidence that Jones Act claims are exempt from arbitration. [Dkt. No. 35, Oral Argument Transcript, 16:16-18:11]. No language within the Jones Act leads to the conclusion that a Plaintiff may not waive the right to a jury trial. <u>See</u> <u>Grooms v. Marquette Transportation Co., LLC</u>, No. 14-CV-603-SMY-DGW, 2015 WL 681688, at *2 (S.D. Ill. Feb. 17, 2015) ("Congress did not express its intention that the rights afforded under the Jones Act be protected against waiver of the right to a judicial forum."). To the contrary, the Jones act permits a seaman to, in effect, waive the right to a Jones Act jury trial by providing a claimant the choice to file a claim under Federal Rule of Civil Procedure 9(h).[5] Importantly, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." <u>Mitsubishi</u>, 473 U.S. at 628. Plaintiff's arbitration clause does not restrict his right to bring a Jones Act claim against his employer, and further does not inherently force Plaintiff to forgo any of his substantive rights. Furthermore, courts have found "the modern rule is that a court enjoys the same power to grant equitable relief in an admiralty case as in an

---

[5] <u>See</u> <u>Garza Nunez v. Weeks Marine, Inc.</u>, No. CIV.A. 06-3777, 2007 WL 496855, at *5 (E.D. La. Feb. 13, 2007).

ordinary civil action." <u>O'Dean v. Tropicana Cruises Int'l, Inc.</u>, No. 98 CIV. 4543 (JSR), 1999 WL 335381, at *2 (S.D.N.Y. May 25, 1999) (citing <u>Farrell Lines Inc. v. Ceres Terminals Inc.</u>, 161 F.3d 115, 116–17 (2d Cir.1998); <u>Pino v. Protection Maritime Ins. Co.</u>, 599 F.2d 10, 15–16 (1st Cir.1979)).

Moreover, the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, is nearly identical to the FAA and enunciates the same policies favoring arbitration. <u>Atalese</u>, 219 N.J. at 440. The NJAA governs "all agreements to arbitrate made on or after January 1, 2003," and exempts from its provisions only "an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:23B-3(a). <u>Arafa v. Health Express Corp.</u>, No. 083154, 2020 WL 3966956, at *10 (N.J. July 14, 2020). Therefore, the arbitration clause at issue is enforceable under the New Jersey Arbitration Act.

As to Plaintiff's argument regarding the 2019 amendment to the Law Against Discrimination, that amendment is inapplicable to this case. N.J. Stat. Ann. § 10:5-12.7 applies "to contracts and agreements entered into, renewed, modified, or amended on or after March 18, 2019." § 10:5-12.7. Here, Plaintiff's employment agreement was entered into in August 2017, almost 2 years before March 18, 2019. As the Amendment applies prospectively, it is inapplicable to this case. <u>See</u> <u>Gaffney v. Levine</u>, No. A-3464-18T2, 2020 WL 468005, at *5 (N.J. Super. Ct. App. Div. Jan. 29, 2020); <u>Neith v. Esquared Hosp. LLC</u>, No. CV1913545, 2020 WL 278692, at *6 (D.N.J. Jan. 16, 2020).[6]

---

[6] N.J. Stat. Ann. § 10:5-12.7 provides that

> a. A provision in any employment contract that waives any substantive or procedural right or remedy relating to <u>a claim of discrimination, retaliation, or harassment</u> shall be deemed against public policy and unenforceable.

18

Finally, Plaintiff argues, that a requirement for the uniform application of admiralty laws precludes state law from compelling arbitration of a seaman's claim. To be sure, the Supreme Court has held that "the Jones Act is to have a uniform application throughout the country unaffected by 'local views of common law rules." Garrett v. Moore-McCormack Co., 317 U.S. 239, 244, 63 S. Ct. 246, 250, 87 L. Ed. 239 (1942) (internal quotation marks omitted) (citing Panama R. Co. v. Johnson, 264 U.S. 375, 392, 44 S. Ct. 391, 396, 68 L. Ed. 748). This "requirement of uniformity is not, however, absolute." Am. Dredging Co. v. Miller, 510 U.S. 443, 451, 114 S. Ct. 981, 987, 127 L. Ed. 2d 285 (1994).

> It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system [,] [b]ut this limitation still leaves the States a wide scope. . . . State rules for the partition and sale of ships, state laws governing the specific performance of arbitration agreements, state laws regulating the effect of a breach of warranty under contracts of maritime insurance—all these laws and others have been accepted as rules of decision in admiralty cases, even, at times, when they conflicted with a rule of maritime law which did not require uniformity.

Romero v. International Terminal Operating Co., 358 U.S. 354, 373–374, 79 S. Ct. 468, 480–481, 3 L.Ed.2d 368 (1959) (footnotes omitted). According to the Third Circuit, "the thrust of [] cases suggests that the concept of uniformity has a good deal less weight than has been thought." Calhoun v. Yamaha Motor Corp., U.S.A., 40 F.3d 622, 636 (3d Cir. 1994), aff'd, 516 U.S. 199, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996). Most notably,

---

b. No right or remedy under the "Law Against Discrimination," P.L.1945, c. 169 (C.10:5-1 et seq.) or any other statute or case law shall be prospectively waived.

(emphasis added). Notably, "courts have not yet ruled on the applicability of Section 12.7 to arbitration agreements," let alone found that Section 12.7 restricts the use of arbitration clauses for claims other than those of discrimination. New Jersey Civil Justice Inst. v. Grewal, No. CV 19-17518, 2020 WL 4188129, at *5 (D.N.J. July 21, 2020). Because the Amendment does not have an effect on Plaintiff's Contract, the Court need not address this particular issue.

precedent provides that the uniformity requirement is relaxed when dealing with procedural doctrines—distinguishing substantive doctrines as those "upon which maritime actors rely in making decisions about primary conduct—how to manage their business and what precautions to take." <u>Am. Dredging Co.</u>, 510 U.S. at 454, 114 S. Ct. at 988–89.

Therefore, the Court finds that the general requirement of uniformity with regard to maritime law does not preclude application of state law to the issue of arbitration. Accordingly, the Court finds no reason to preclude enforcement of the arbitration clause at issue against Plaintiff, under state arbitration law.

IV.   <u>Conclusion</u>

For the foregoing reasons, the Court will grant Defendants' Motion to stay the present action, and compel arbitration.

An appropriate Order shall issue.

Dated: August 18, 2020

_____/s/ Joseph H. Rodriguez_____
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE